**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,**

v.

**George M. NOTTER, Jr., Defendant.**

**Civ. A. No. 86–1278 SSH.**

United States District Court,
District of Columbia.

Oct. 8, 1987.

T. Michael Kerrine, Washington, D.C., for plaintiff.

Michael Evan Jaffe, Steven P. Ward, Washington, D.C., for defendant.

MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant's motion for summary judgment,

plaintiff's motion to compel production of documents, defendant's motion to extend discovery, and defendant's motion to compel deposit of rent. Upon consideration of the motion for summary judgment, the opposition thereto, and the entire record, the Court concludes (1) that some, but not all, of plaintiff's claims are time-barred by the applicable statute of limitations, (2) that the motions to compel should be denied, and (3) that a limited extension of discovery is appropriate.

## Background

On September 26, 1976, plaintiff National Railroad Passenger Corporation (Amtrak), a District of Columbia corporation, and Union Station Associates of New London (US-ANL), a Connecticut limited partnership, executed a lease under which Amtrak was to pay USANL approximately $45,000 annually, plus a portion of taxes and operating expenses, in exchange for the right to use a portion of the Union Railroad Station in New London, Connecticut (Union Station), as a passenger rail station. The lease was to expire on the later of April 30, 1996, or 20 years after the date on which Amtrak was able to occupy the station. In January of 1977, Amtrak and USANL executed an additional agreement, under which Amtrak agreed to pay for, and USANL agreed to provide, janitorial services in addition to those required under the lease. The defendant, George M. Notter, Jr., a Massachusetts citizen, is USANL's general partner.[1]

On May 10, 1978, USANL leased a portion of Union Station to the United States Government for use as an armed forces recruiting facility. The Government took possession of that portion in August of 1978. Although Notter did not inform Amtrak officials in Washington, D.C., of that lease, it is undisputed that Amtrak employees at Union Station were aware of the Government's occupancy.

Amtrak's Senior Real Estate Officer in Washington learned of the Government lease "sometime after the Spring of 1984."

[Affidavit of Mary Ann Trueman at 1.] In 1985, Amtrak, exercising authority granted by its lease, conducted an audit of US-ANL's financial records. As a result of that audit, Amtrak officials in Washington, D.C., concluded that USANL had breached both the lease with Amtrak and the contract for additional janitorial services.

On May 5, 1986, pursuant to the terms of its lease with USANL, Amtrak initiated private arbitration, claiming that Amtrak had been overcharged for operating expenses. On May 8, 1986, Amtrak filed this lawsuit, alleging that a portion of the space leased by USANL to the Government previously had been leased to Amtrak, and that USANL had billed Amtrak for more janitorial services than USANL actually provided. Amtrak claimed constructive eviction, breach of the covenant of quiet enjoyment, and breach of the supplemental janitorial contract. In June of 1986, the parties agreed to withdraw the request for arbitration of the operating expense overcharge claim, and to consolidate that claim with this action. On June 16, 1986, Amtrak filed an amended complaint, adding the overcharge claim. Notter has counterclaimed, alleging that Amtrak has breached both the lease and the supplemental cleaning contract by failing to pay the full amounts due under those agreements.

## Discussion

Notter moves for summary judgment on the grounds that all of Amtrak's claims are barred by the applicable statute of limitations, and, alternatively, that Amtrak cannot state a claim for constructive eviction. Also pending are Amtrak's motion to compel production of copies of documents previously inspected by Amtrak, and Notter's motion to extend the discovery period. The Court addresses each motion in turn.

## I. *Notter's Motion for Summary Judgment*

 Because subject matter jurisdiction over plaintiff's claims is based on diversity of citizenship, *see* 28 U.S.C. § 1332,

1. Amtrak also named USANL and each of US-ANL's limited partners as defendants. By Memorandum Opinion and Order of July 28, 1986, the Court granted those parties' motion to dismiss, leaving Notter as the only defendant.

**4**

the Court must apply the law that would be applied in the District of Columbia courts, *see Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), including the statute of limitations that would be applied by those courts. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464, 1471, 89 L.Ed. 2079 (1945). When, as here, this Court must choose between the statutes of limitations of two or more jurisdictions, the Court must do so according to the choice-of-law rules applied in the District of Columbia courts. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941).

■ In this case, the Court must determine preliminarily whether the laws of Connecticut or the laws of the District of Columbia supply the statute of limitations applicable to Amtrak's claims. Because the District of Columbia courts would hold that the statute of limitations issue is procedural and therefore governed by forum law, *see Hodge v. Southern Railway Co.,* 415 A.2d 543, 544 (D.C.1980); *May Department Stores v. Devercelli,* 314 A.2d 767, 773 (D.C.1973), this Court will do so as well. *See Banks v. Chesapeake and Potomac Telephone Co.,* 802 F.2d 1416, 1429 n. 7 (D.C.Cir.1986); *Hoffa v. Fitzsimmons,* 673 F.2d 1345, 1360 n. 41 (D.C.Cir.1982). Accordingly, the Court holds that the relevant District of Columbia statute of limitations—D.C.Code § 12–301—applies to this case.[2]

In its amended complaint, Amtrak charges Notter with breach of the supplemental janitorial agreement, as well as three breaches of the Union Station lease.

Under D.C.Code § 12–301(7), the contract claim is subject to a three-year limitation period. Similarly, the District of Columbia courts impose a three-year limitation period on breach of lease claims. *See Hines v. John B. Sharkey Co.,* 449 A.2d 1092, 1094 n. 4 (D.C.1982); *Management Partnership, Inc. v. Crumlin,* 423 A.2d 939, 942 n.* (D.C.1980).[3]

■ It is well established that the statute of limitations ordinarily begins to run from the time at which all elements of the plaintiff's cause of action exist. *S. Freedman & Sons v. Hartford Fire Ins. Co.,* 396 A.2d 195, 198 (D.C.1978). Therefore, the statute of limitations began to run on Amtrak's claims for breach of the covenant of quiet enjoyment and for constructive eviction in August of 1978, when the Government occupied the disputed space in Union Station. *See, e.g., St. Paul Title Ins. Corp. v. Owen,* 452 So.2d 482, 485 (Ala.1984); *Rajchandra Corp. v. Tom Sawyer Motor Inns, Inc.,* 106 A.D.2d 798, 484 N.Y.S.2d 257, 261 (1984). Consequently, those claims became time-barred in August of 1981.

■ Similarly, the three-year limitations period applicable to any breach of the contract for additional janitorial services began to run when USANL breached the contract. *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1198 (D.C.1984). Although the Court's analysis is severely hampered by the fact that neither party has supplied the Court with a copy of the supplemental agreement, it cannot agree with defendant's suggestion that the limitation period should be measured from the

---

**2.** Dicta in *Hodge,* 415 A.2d at 544 n. 3, suggests that the District of Columbia courts will apply another jurisdiction's statute of limitations when the limitations period is prescribed by the same law that creates the cause of action; that is, when the limitations period is made a part of the "substantive" law. This exception is not relevant here, however, because Connecticut law provides for general limitations periods applicable to broad classes of claims. *See* Conn. Gen.Stat. § 52–577 (three-year period for tort claims); Conn.Gen.Stat. § 52–576 (six-year period for contract claims); Conn.Gen.Stat. § 52–584 (two-year period for claims of damage to person or property); *see also Mizell v. Welch,*

245 F.Supp. 143, 144 (D.Conn.1965) (Connecticut statutes of limitation are procedural); *Earnhardt v. Shattuck,* 232 F.Supp. 845, 847 (D.Vt. 1964) (same).

**3.** In *Camalier & Buckley–Madison, Inc. v. Madison Hotel, Inc.,* 513 F.2d 407, 420 n. 93 (D.C.Cir. 1975), the Court of Appeals referred to the tort of "wrongful eviction." Whether Amtrak's constructive eviction claim is characterized as a tort or a breach of lease is irrelevant for statute of limitations purposes, because torts are governed by a three-year limitation period. *See Richards v. Mileski,* 662 F.2d 65, 68 & n. 5 (D.C.Cir.1981).

date in 1978 on which USANL subcontracted with another company, Southeastern Enterprises, for additional janitorial services. The nature of USANL's subsidiary arrangements to meet its contractual obligations to Amtrak, and the date on which those arrangements were made, are irrelevant to whether USANL actually provided the required janitorial services. Rather, USANL breached the contract with Amtrak, if ever, when it failed to provide the additional services. Moreover, where a contract obligates one party to perform a series of acts, and provides for a corresponding series of payments in consideration thereof, each failure to perform may be considered a separate, partial breach of contract. *See William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191 (D.C.1980); *Le John Mfg. Co. v. Webb*, 91 A.2d 332, 335 (D.C.Cir.1952); *see generally* 4 A. Corbin, *Corbin on Contracts* §§ 950–51 (1951); 11 W. Jaeger, *Williston on Contracts* § 1294 (1968). In the context of this case, a partial breach would have occurred each time USANL billed Amtrak for janitorial services not performed. Since the parties refer to the janitorial contract in terms of monthly installments, it is possible that some of Amtrak's claims are not time-barred. On the basis of the record now before it, the Court cannot hold that no cause of action for breach of the supplemental janitorial contract accrued to Amtrak on or after May 8, 1983.[4]

▮ A similar, though slightly more involved, analysis applies to Amtrak's claim that USANL overcharged for operating expenses due under the lease. As an obligation that occurred periodically, a separate cause of action would have accrued each time USANL billed Amtrak for expenses not properly owed. However, this claim differs from the janitorial agreement claim because Amtrak initially sought to resolve the matter through private arbitration, as required by Article VI, Section (c), of the lease. Although the arbitration process was commenced on May 5, 1986, the claim was not added to the complaint until June 16, 1986. Courts have the equitable authority to toll the statute of limitations while a matter is referred to arbitration, *see, e.g., A. Teichert & Son, Inc. v. State*, 238 Cal.App.2d 736, 48 Cal.Rptr. 225, 232 (1965), and, in light of defendant's agreement to terminate arbitration so that the claim could be consolidated in this action with Amtrak's other claims, fairness dictates that this claim be deemed timely with respect to any overcharges that occurred on or after May 5, 1983.[5]

▮ Amtrak seeks to avoid the consequences of the statute of limitations by claiming that Notter fraudulently concealed relevant facts from Amtrak. When a defendant has fraudulently concealed from a plaintiff "the basis of a cause of action," the statute of limitations is tolled "until the plaintiff discovers or has a reasonable opportunity to discover the wrong." *William J. Davis, Inc.*, 412 A.2d at 1191; *see also, e.g., Bailey v. Greenberg*, 516 A.2d 934, 941 (D.C.1986); *Estate of Chappelle v. Sanders*, 442 A.2d 157, 158 (D.C.1982). To establish fraudulent concealment, this court has required plaintiffs to establish three elements: (1) wrongful concealment by the defendant and (2) plaintiff's failure to discover the operative facts forming the basis for the cause of action during the limitations period (3) despite the exercise of due diligence. *See Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, 1522 (D.C.C.1984), *vacated on other grounds*, 807 F.2d 1000 (D.C.Cir.1986) *cert. denied*,

---

4. Similarly, neither party has addressed whether any such breaches could be deemed waived or excused by Amtrak, and the Court expresses no opinion on that issue.

5. The Court rejects, however, Amtrak's contention that Notter "waived" his statute of limitations defense by agreeing to transfer the claim from private arbitration to this forum. The statute of limitations could have been raised in private arbitration, *see, e.g., Skidmore, Owings & Merrill v. Connecticut General Life Ins. Co.*, 25 Conn.Supp. 76, 197 A.2d 83, 90 (1963); *Borough of Ambridge Water Authority v. Columbia*, 458 Pa. 546, 328 A.2d 498, 500–01 (1974); *Woodward Heating & Air Conditioning Co. v. American Arbitration Ass'n*, 259 Pa.Super. 460, 393 A.2d 917, 920 n. 4 (1978), and there is no basis for inferring a waiver of that defense from the defendant's agreement to consolidate all claims in this forum.

— U.S. ——, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987); *General Aircraft· Corp. v. Air America, Inc.*, 482 F.Supp. 3, 8 (D.D.C. 1979). Given the uncontroverted facts of this case, Amtrak cannot establish any of these elements.

▇▇ Amtrak claims that Notter "concealed" his alleged breaches by not notifying Amtrak officials in Washington of the Government lease. Amtrak has not identified, nor can the Court find, any provision of the lease obligating Notter to notify Amtrak of other Union Station leases.[6] Further, Amtrak does not allege that Notter ever denied the existence of the Government lease when confronted by Amtrak, or misrepresented the terms of that lease. Absent some contractual duty to notify Amtrak of the lease, Notter's silence does not constitute fraudulent concealment:

> Generally the defendant must have done something of an affirmative nature designed to prevent discovery of the cause of action. *Searl v. Earll*, 95 U.S. App.D.C. 151, 221 F.2d 24 (1954). Although mere silence, failure to disclose, or ignorance of facts establishing a claim may not ordinarily constitute concealment for these purposes, any statement, word or act which tends to suppress the truth raises the suppression to that level. *Jackson v. Combs*, 18 D.C. (7 Mackey) 608 (1888).

*William J. Davis, Inc.*, 412 A.2d at 1191–92 (footnote omitted); *see also Estate of Chappelle*, 442 A.2d at 158 (look to "affirmative acts" of defendant); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 996 (D.C.1978) (look to defendant's "conduct" or "false representations"); *cf.*

*Doolin v. Environmental Power Ltd.*, 360 A.2d 493, 497 (D.C.1976) (statute of limitations· not tolled because plaintiffs were neither "prevented from ascertaining the facts or induced to refrain from filing suit"). To hold otherwise would vitiate the effectiveness of statutes of limitations by allowing plaintiffs to sleep on their rights until "notified" by the potential defendants of the defendants' allegedly wrongful acts.[7]

▇▇ Nor can Amtrak establish that it did not "know," as a corporate principal, of USANL's lease with the Government. Under principles of agency law, a principal is charged with knowledge of facts known to his agent which the agent had a responsibility to bring to the attention of the principal. *McHugh v. Duane*, 53 A.2d 282, 285 (D.C.1947); *see also Bowen v. Mount Vernon Savings Bank*, 105 F.2d 796, 799 (D.C. Cir.1939) (rule seeks to prevent "the injustice of allowing the principal to avoid, by acting vicariously, burdens to which he would become subject if he were acting for himself"). In his deposition, Notter testified that he discussed the Government lease with Amtrak employees at Union Station, including the station manager, around the time that the Government took possession in August of 1978. Notter further claims that Amtrak personnel actually moved Amtrak furniture to make room for the Government's, and that Amtrak's station police voluntarily relocated their office to space that Notter provided in "exchange."

▇▇ Amtrak does not challenge the accuracy of any of Notter's allegations, and does not offer the affidavits of any of its

---

6. That the parties were capable of imposing notice obligations when they wished is evident from the lease's numerous notice provisions. *See, e.g.*, Article VI (status of preparations for occupancy); Article VII, Section (f) (Landlord's intention to terminate provision of electricity); Article XVIII, Section (a) (termination of lease upon default). Nevertheless, the single lease provision dealing with USANL'S obligations with respect to subsequent leases of space in Union Station fails to mention a duty to notify Amtrak. *See* Article XV, Section (c).

7. Similarly, with regard to the supplemental janitorial contract, Amtrak does not allege that

Notter "concealed" the cleanliness of Union Station. Nor does Amtrak provide support for its allegation that Notter deliberately concealed USANL's contract with Southeastern Enterprises for additional janitorial services. Amtrak's officials discovered the contract during the 1985 audit of USANL's financial records, an audit that Amtrak could have performed, under Article V, Section (b), of its lease, in 1978. Amtrak does not allege that Notter deliberately concealed the Southeastern Enterprises contract from auditors in 1985, and there is no basis for presuming that he would have done so in 1978.

Union Station employees in rebuttal. Instead, Amtrak argues that its Union Station personnel are not "high enough" in the corporation to charge Amtrak with their knowledge. The Court cannot agree. It is unthinkable to suggest that Amtrak's station manager was not sufficiently aware of the terms of Amtrak's lease to know which areas of the station Amtrak was authorized to occupy.[8] Surely, if a "squatter" less imposing than the United States Government had taken up residence in a portion of Amtrak's leased space, he would not have been allowed to remain there undisturbed for seven years until Amtrak's Senior Real Estate Officer in Washington inadvertently happened upon him. The undisputed facts of this case, as well as the relevant case law, *see District of Columbia Armory Board v. Volkert*, 402 F.2d 215, 218 (D.C. Cir.1968); *Capital View Realty Co. v. Meigs*, 92 A.2d 765, 766 (D.C.1952), demonstrate that Amtrak may be charged with knowledge of the facts underlying its causes of action for breach of the covenant of quiet enjoyment and constructive eviction.

■ Finally, even if the Court were to find that Amtrak was unaware of the alleged encroachment caused by the Government's lease, there would be no fraudulent concealment because Amtrak failed, as a matter of law, to exercise due diligence in discovering the encroachment. Although the meaning of "due diligence" normally

rests on factual findings left to the trier of fact, this Court has granted summary judgment in the past "where the evidence is such that the court could only permit the issue of the due diligence to be resolved by a jury in one way...." *Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242, 243 (D.D. C.1975), *aff'd mem.*, 543 F.2d 417 (D.C.Cir. 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). This case provides a striking example: a lessee in active possession and use of the leased premises cannot, in the exercise of due diligence, fail to discover for seven years the presence of someone else openly sharing the leased property.[9] Amtrak's failure to exercise due diligence precludes it from relying on the doctrine of fraudulent concealment. *Estate of Chappelle*, 442 A.2d at 158.

In summary, the Court holds that counts one (constructive eviction) and two (breach of covenant of quiet enjoyment) of the amended complaint are barred by the applicable statute of limitations.[10] Count three (breach of supplemental janitorial contract) is barred with respect to services billed prior to May 8, 1983, and count four (overcharges for operating expenses) is barred for charges prior to May 5, 1983.[11]

II. *Amtrak's Motion To Compel Production of Documents*

■ On October 27–28, 1986, Amtrak representatives inspected documents be-

---

8. Even if Amtrak could present affidavits to the effect that none of its station employees knew which space Amtrak was entitled to occupy, and therefore were unaware that the Government had occupied space previously leased to Amtrak, the result would be the same because "[a] corporation may limit the authority of its agents but it 'cannot disable itself entirely to receive information or notice of facts affecting its interests.'" *Capital View Realty Co. v. Meigs*, 92 A.2d 765, 766 (D.C.1952) (quoting *Prudential Ins. Co. of America v. Saxe*, 134 F.2d 16, 31 (D.C.Cir.), *cert. denied*, 319 U.S. 745, 63 S.Ct. 1033, 87 L.Ed. 1701 (1943)).

9. The analysis applies with equal force to Amtrak's claim alleging breach of the supplemental janitorial services contract. As noted above, *see supra* note 7, Amtrak waited until 1985 to exercise its contractual right to audit USANL's financial records for 1977–84. This lengthy delay falls considerably short of due diligence, espe-

cially in light of the fact that the lease requires USANL to retain such records for only three years. *See* Article V, Section (b). Had Amtrak conducted its audit within the three-year period contemplated under the lease, it would have discovered USANL's contract with Southeastern Enterprises within the three-year limitation period prescribed by D.C.Code § 12–301(7).

10. Accordingly, the Court does not reach Notter's argument that Amtrak has failed to state a claim for constructive eviction.

11. Notter's motion to compel deposit of unpaid operating expenses and charges for supplemental janitorial services involves, for the most part, a period of time within the relevant limitations period. Upon consideration of the entire record, the Court finds that this is not a case in which the equities favor pre-judgment depositing of unpaid rent into the registry of the Court. Accordingly, defendant's motion is denied.

**8**

longing to Notter in Boston, Massachusetts. After Amtrak identified those documents that were of interest, the parties agreed that Notter would arrange to have copies made and delivered to Amtrak in Washington. Amtrak was to bear the cost of copying. When Amtrak still had not received the copies on December 5, 1986, it moved to compel their production. Amtrak received the documents on December 15, 1986.

As Amtrak concedes, its motion is now moot to the extent that it seeks production of the copied documents. However, Amtrak contends that it should be awarded attorney's fees and costs as sanctions for Notter's delay. The Court declines to impose sanctions. Because of the procedural posture of this case, the delay experienced, while not to be encouraged or condoned, did not result in material prejudice.

### III. *Notter's Motion To Extend Discovery*

 Notter moves to extend the discovery period so that he may receive responses to discovery requests which, although served within the period authorized by the Court, came with less than 30 days remaining in the discovery period. Amtrak takes the position that because its responses were not due within the prescribed period of time, it is not required to respond. The Court grants defendant's motion for the limited purpose of receiving responses to the discovery requests outstanding when discovery ended on January 9, 1987. Accordingly, those requests are reinstated as of the date of this Memorandum Opinion. Plaintiff shall respond within the time periods prescribed by the Federal Rules of Civil Procedure. Any further depositions shall be taken within 60 days of the date of this Order.

### CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's motion to compel production of documents is denied, and defendant's motion to extend discovery is granted. Defendant's motion to compel deposit of rent is denied. An appropriate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on defendant George M. Notter, Jr.'s motion for summary judgment, plaintiff National Railroad Passenger Corporation's motion to compel production of documents, defendant's motion to extend the discovery period, and defendant's motion to compel deposit of rent. For the reasons stated in the accompanying Memorandum Opinion, upon consideration of the motions, the oppositions thereto, and the entire record, it hereby is

ORDERED, that defendant's motion for summary judgment is granted in part and denied in part. Counts one and two of the amended complaint are dismissed with prejudice. Count three of the complaint is dismissed with prejudice, to the extent that it relates to charges for janitorial services which accrued before May 8, 1983. Count four of the amended complaint is dismissed with prejudice, to the extent that it relates to charges for taxes and operating expenses, as defined under Article V of the lease between the plaintiff and Union Station Associates of New London, which accrued before May 5, 1983. It hereby further is

ORDERED, that defendant's motion to compel deposit of rent is denied. It hereby further is

ORDERED, that plaintiff's motion to compel production of documents is denied. It hereby further is

ORDERED, that defendant's motion to extend the discovery period is granted. All discovery requests pending as of January 9, 1987, are reinstated as of the date of this Order, and shall be responded to within the time periods prescribed by the Federal Rules of Civil Procedure. Any further depositions shall be taken within 60 days of the date of this Order.

SO ORDERED.